**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TIFFANY TRIBBLE,                                Case No. 1:09-cv-568
    Plaintiff,                             Weber, J.
                                                Litkovitz, M.J.

    v.

CINCINNATI BELL TELEPHONE,
    Defendant.

**REPORT AND RECOMMENDATION[1] THAT DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT (Doc. 17) BE GRANTED**

Plaintiff Tiffany Tribble brings this action through counsel against defendant Cincinnati

Bell Telephone Company LLC[2] ("CBT") alleging that defendant discriminated against her on the

basis of her sex and race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000 *et seq.*, and Ohio Rev. Code § 4112.02(A) and Ohio Rev. Code § 4112.99. This

matter is before the Court upon the defendant's motion for summary judgment (Doc. 17),

plaintiff's opposing memorandum (Doc. 25), and defendant's reply memorandum. (Doc. 31).

The parties have each filed proposed findings of fact and conclusions of law (Docs. 18, 27) to

which each has highlighted as true, false, or irrelevant. (Docs. 26, 32). Having considered the

entire record, including the parties' briefs and related filings (Docs. 19, 33, 34, 35), the

undersigned recommends that defendant's motion for summary judgment be granted.

A motion for summary judgment should be granted if the evidence submitted to the court

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] CBT asserts that it is incorrectly captioned as Defendant Cincinnati Bell Telephone. (Doc. 17, p. 1).

demonstrates that there is no genuine issue as to any material fact and that the movant is entitled

to summary judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving

party must demonstrate the absence of genuine disputes over facts which, under the substantive

law governing the issue, could affect the outcome of the action.  *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "is

required to present some significant probative evidence which makes it necessary to resolve the

parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d

1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989).  "[A]fter a

motion for summary judgment has been filed, thereby testing the resisting party's evidence, a

factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition

testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir.

1991).

The trial judge's function is not to weigh the evidence and determine the truth of the

matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at

249-50.  The trial court need not search the entire record for material issues of fact, *Street v. J.C.

Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a

*prima facie* case, summary judgment is warranted.  *Street*, 886 F.2d at 1478 (citing *Celotex* and

*Anderson*).  "Where the record taken as a whole could not lead a rational trier of fact to find for

2

the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## I. Facts

*A.  Plaintiff's employment history at CBT*

Plaintiff is an African-American female who was hired by CBT on January 8, 1996.  That same year, plaintiff became a member of the Union.  Plaintiff worked in a variety of positions throughout her employment, including as a directory assistance information associate, sales consultant, and residential retention specialist.  Plaintiff applied for and received the position of Splicer in May 2007.

An employee who is first put in the position of Splicer must undergo training, including, riding to/from repair jobs with experienced Splicers, observing and assisting with work performed by experienced Splicers, and passing splicing classes.  (Doc. 19, pp. 29, 37, 47). Because Splicers must drive commercial vehicles weighing 10,000 pounds or more after they have completed training, they must comply with the medial examination certification requirements applicable to commercial drivers.  *Id.* at 3.  To become fully proficient in the Splicer position, an employee typically has forty-two months of experience in that position. (Doc. 17, Simpson Aff., ¶11).

On December 19, 2007, plaintiff received a written notice from her supervisor stating the plaintiff had failed to pass the Basic Splicing class and therefore needed to undergo additional training.  The notice stated:

> You failed to comply with passing the basic splicing class 12/14/07.  In January you will begin reporting to NE&C to improve your splicing techniques.  In February you will return back to Reading and Field repair to continue your development.  The next basic splicing class that is held you will be required to

3

retake. If you fail Basic Splicing the second time will lead to possible demotion
up to and including dismissal.

(Doc. 19, Ex. 8).

Plaintiff admitted that she needed additional training, did not dispute the fact that she had

received the written notice, and did not file a grievance with her Union regarding the written

notice. (Doc. 19, pp. 23, 29-30, 36). Thereafter, plaintiff began additional training with the

Construction and Maintenance Group in January 2008. *Id.* at 37.

### B. Plaintiff's medical information relating to her employment

Plaintiff had taken leave under the Family and Medical Leave Act ("FMLA") for

migraine headaches intermittently from at least March 2004 though February 2008.

Plaintiff's requests for FMLA leave were supported by a medical certification completed by her

physician. Plaintiff's physician often noted that her migraines were "non-predictable" and that

they would cause her to be "incapacitated." (Doc. 19, p. 78, Ex. 26). Plaintiff's migraines would

come and go without warning on an intermittent basis and she occasionally experienced dizziness

and blacked out from time to time. Additionally, plaintiff was diagnosed with Bell's Palsy,

which remained a current diagnosis until at least December 2007.

On February 12, 2008, plaintiff completed a medical questionnaire for purposes of

obtaining her commercial driver's medical certificate. The questionnaire asked whether plaintiff

had "any illness or injury in the last 5 years." Plaintiff checked "no." (Doc. 19, Ex. 9). The

questionnaire also asked whether plaintiff had any "fainting or dizziness," or "stroke or

paralysis." Plaintiff again checked "no." *Id.* Plaintiff signed the completed medical

questionnaire, stating "I certify that the above information is complete and true. I understand that

inaccurate, false or missing information may invalidate the examination and my Medical

4

Examiner's Certificate."  *Id.*

    *C.  Plaintiff's termination and offer of reinstatement*

    On February 21, 2008, Tracy Wilson, Human Resources Manager, Gary Vater, union

representative, and Michelle Kilpatrick, Senior Human Resources Manager, met with plaintiff to

discuss her answer to the question inquiring about any illness or injury in the previous five years.

Mr. Wilson stated that, based on company records, plaintiff misrepresented her illness and

falsified a company document by failing to acknowledge her history of migraine headaches on

the report.  Plaintiff was then suspended.

    Plaintiff provided a statement indicating that she misunderstood the question and did not

consider the migraines to be an illness or injury.  (Doc. 33, Ex. 8).  While plaintiff had a history

of migraines and had been approved for intermittent leave if necessary through February of 2008,

plaintiff had not missed work on account of a migraine for over a year.  (Doc. 33, Ex. 7).

Plaintiff also provided a letter from her physician pointing out that she was not a danger to

anyone, that her condition was stable, and that she had not had a migraine since she moved into

her new position.  (Doc. 33, Ex. 9).

    Ultimately, Ms. Simpson, then-Director of Employee Relations, made the decision to

terminate plaintiff's employment pursuant to Section 2.9 of CBT's Code of Conduct concerning

"Company Records," which prohibits employees from providing false or misleading information.

According to Simpson, any employee who provided inaccurate or incomplete information was

guilty of falsification and would be terminated.  (Doc. 33, pp. 32-33).

    At the time of plaintiff's termination, she had been a Splicer from May 2007 through

February 2008, or for approximately nine months.  (Doc. 19, p. 27).  Plaintiff was not replaced

5

after her employment as a Splicer was terminated.  (Doc. 17, Simpson Aff., ¶ 6).

The Union filed a grievance challenging plaintiff's dismissal.  In the vast majority of cases, CBT denies such grievances and the dismissal stands.  *Id.* at ¶ 6.  On occasion, during the grievance process, the Union and CBT agree to compromise and settle a grievance.  After CBT initially denied plaintiff's grievance, Ms. Simpson spoke with Monica Hogan, Representative for the Communication Workers of America International Union, to discuss a possible settlement of plaintiff's grievance.  Ms. Hogan asked Ms. Simpson if CBT would be willing to take plaintiff back as an employee.  (Doc. 17, Simpson Aff. ¶ 8).

Ms. Simpson informed Ms. Hogan that CBT could reinstate plaintiff as a Technical Clerk.  Ms. Hogan accepted the offer.  On August 18, 2008, nearly six months after her termination, the Union and CBT entered into a settlement agreement to reinstate plaintiff to the position of Technical Clerk, a lower paying position than the Splicer position she previously held.  The agreement also provided that plaintiff would be considered an employee hired after February 1, 2008.[3]  The agreement further provided that plaintiff was subject to termination for her next offense.  (Doc. 33, Ex. 18 at 2).

Plaintiff was not included in the Union's settlement discussions and was not aware of the agreement until she received a signed copy of the offer in late August 2008.  (Tribble Dep. 79-83).  Plaintiff rejected the agreement and refused to return to work.

*D.  CBT's treatment of other employees*

Plaintiff alleges that Caucasian Splicers, who also provided inaccurate medical information, were treated more favorably by CBT.  Within less than a week of plaintiff's

---

[3] Different wage rates apply to CBT employees hired before and after February 1, 2008.  (Doc. 33, p. 66-67).

termination, Mike Garibay, a Caucasian Splicer, was accused of the same offense as plaintiff. (Doc. 33, Ex. 12). Garibay was suspended on March 6, 2008, for a violation of Section 2.9 of the Code of Conduct because he did not disclose an "open and active" workers compensation claim on his February 27, 2008 Examination report. (Doc. 33, Exs. 12 and 14). Garibay had been a Splicer for nearly 10 years at the time he was suspended. (Doc. 17, Simpson Aff. ¶ 9). Garibay was not terminated, and returned to work as a Splicer pursuant to an April 2008 agreement between CBT and the local affiliate of the Communication Workers of America (CWA) union. (Doc. 33, Ex. 16).

On October 15, 2008, Clarence Miracle, another Caucasian Splicer, provided false information on his medical certificate. Miracle failed to list an "injury or illness" on the form. Miracle missed work in 2007 due to injuries he sustained in an accident. Miracle was suspended on October 24, 2008 for a violation of Rule 2.9 and was dismissed by Ms. Simpson on October 30, 2008. At the time of his termination, Miracle had been in the Splicer position approximately eight years. (Doc. 17, Simpson Aff., ¶ 10). Miracle filed a grievance with the Union. Pursuant to a December 2008 agreement between CBT and the local affiliate of the CWA union, he was reinstated to his previous job as a Splicer with no cut in pay. (Doc. 33, Ex. 28).

Additionally, from 2006 through 2008, approximately sixty-two hourly employees were terminated for misconduct and were not offered any form of reinstatement. (Doc. 17, Simpson Aff., ¶ 12).

## II. Opinion

Plaintiff's complaint asserts claims for gender and race discrimination based on the allegation that CBT "treated plaintiff differently than similarly situated males [and Caucasian

7

employees] who were reinstated to their previous positions after being dismissed for the same or similar conduct." (Doc. 1, ¶¶ 10-11). Plaintiff's complaint does not include any claims challenging her termination. Defendant now moves for summary judgment. Defendant argues that plaintiff cannot establish a *prima facie* case of gender or race discrimination because she did not suffer an adverse action, was not qualified for the position, and cannot identify any similarly situated non-protected employees that were treated more favorably. Defendant further argues that it did not reinstate plaintiff to her previous position for the legitimate reason that she was having difficulty in satisfactorily performing the Splicer job duties and she cannot show that the reason for not reinstating her to her previous position was a pretext for unlawful discrimination.

Plaintiff claims that she is able to establish a *prima facie* case of discrimination because the terms and conditions of the settlement agreement constitute an adverse action, she met the objective qualifications for her position, and she was treated less favorably than similarly-situated Caucasian males. She argues that she can establish a genuine issue of material fact as to whether defendant's articulated reason for her termination is a pretext for discrimination. Plaintiff contends that a jury could find that the reason defendant has articulated for the reinstatement decision has no basis in fact and was not the real motivation for failing to reinstate her to her previous Splicer position.

### A. Applicable Law

Title VII makes it unlawful for an employer to discharge an individual or to otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race or sex. 42 U.S.C. § 2000e-2(a)(1). The standards for establishing a discrimination claim under Title VII are equally applicable to plaintiff's claims under Ohio Rev. Code § 4112. *See Dews v. A.B. Dick Co.*, 231 F.3d 1016,

8

1021 n.2 (6th Cir. 2000); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992).

An employee may base her claim of employment discrimination on a theory of disparate impact or disparate treatment or both. *Lynch v. Freeman*, 817 F.2d 380, 382 (6th Cir. 1987). In the instant case, plaintiff proceeds under the disparate treatment theory of discrimination. Under the disparate treatment theory, the plaintiff must show that the employer has treated some people less favorably than others because of their race, color, religion, sex or national origin. Unlike the disparate impact theory, proof of discriminatory motive is critical in the case of disparate treatment. *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 92 (6th Cir. 1982) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Claims of disparate treatment are analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir. 2002); *Mitchell*, 964 F.2d at 582. The *McDonnell Douglas* burden-shifting analysis requires that plaintiff first establish a *prima facie* case of discrimination. *Id.*

A plaintiff may establish a *prima facie* discrimination claim by either direct or circumstantial evidence. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

A plaintiff who lacks direct evidence of discrimination may establish a *prima facie* case of discrimination through circumstantial evidence by showing that: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the

9

position lost; and 4) she was replaced by an individual outside the protected class. *Mitchell,* 964 F.2d at 582. Plaintiff may also establish the fourth prong of a *prima facie* case of discrimination by showing that she was treated less favorably than a similarly-situated individual outside the protected class. *See Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir. 2002).

If the plaintiff seeks to establish that she was treated less favorably than a similarly-situated individual, she must prove that all relevant aspects of her employment situation were similar to those of the employee with whom she seeks to compare herself. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998). To be similarly-situated in a disciplinary context, the individuals must have dealt with the same supervisor, they must have been subject to the same standards, and they must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for that conduct. *Id.* (quoting *Mitchell,* 964 F.2d at 583); *Smith v. Leggett Wire Co.,* 220 F.3d 752, 762 (6th Cir. 2000). The determination of whether the plaintiff and another employee shared the same supervisor must be made "on a case-by-case basis and does not depend entirely on whether the two shared the same immediate supervisor." *Barry v. Noble Metal Processing, Inc.*, 276 F. App'x 477, 481 (6th Cir. 2008) (citing *McMillan v. Castro,* 405 F.3d 405, 414 (6th Cir. 2005)). "[I]n many instances, the term 'supervisor' should be construed broadly to include cases where both employees' situations were handled by the same 'ultimate decision-maker.'" *Id.* (citing *McMillan,* 405 F.3d at 414). Accordingly, a plaintiff and a comparable employee who are directly supervised by different individuals may still be similarly situated if the same member of management disciplined both of them. *Id.* (citing *McMillan,* 405 F.3d 405; *Seay v. Tenn. Valley Auth.,* 339 F.3d 454, 459 (6th Cir. 2003)).

"[T]he weight to be given to each factor can vary depending upon the particular case."

10

*Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003). The ultimate question is whether

employees involved in acts of "comparable seriousness" were nonetheless retained. *Clayton*, 281

F.3d at 611 (citing *McDonald v. Santa Fe Transp. Co.,* 427 U.S. 273, 283 n.11 (1976)).

The employer is entitled to summary judgment if the plaintiff does not establish a *prima*

*facie* case. If the plaintiff establishes a *prima facie* case, the employer can overcome the *prima*

*facie* case by articulating a legitimate, nondiscriminatory reason for the adverse employment

action. *McDonnell Douglas,* 411 U.S. at 802. If the employer carries its burden, the plaintiff

must show that the reasons offered by the employer were not its true reasons, but were a pretext

for discrimination. *Id*. at 804.

The Sixth Circuit has categorized different evidentiary bases for three types of pretext

showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate

the employer's decision; or 3) the reasons were insufficient to warrant the decision. *Manzer v.*

*Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other*

*grounds, Geiger v. Tower Automotive*, 579 F.3d 614 (6th Cir. 2009). The first type of showing

consists of evidence that the reason offered for the plaintiff's discharge never happened, *i.e.*, the

reason is factually false. *Id*. The third showing ordinarily consists of evidence that other

employees, particularly those outside the protected class, were not discharged even though they

engaged in conduct substantially identical to that which purportedly motivated the plaintiff's

discharge. *Id*. If the plaintiff establishes the first or third showing, a permissive inference of

discrimination arises. *Id*. For the second showing, where the plaintiff admits the factual basis

underlying the employer's proffered explanation and further admits that such conduct could

motivate dismissal, the plaintiff must introduce additional evidence of discrimination because

the reasons offered by the defendant are not directly challenged and therefore do not bring about

an inference of discrimination. *Id.*

The Sixth Circuit has cautioned that *Manzer*'s three-part test is not to be applied in a formalistic manner. *See Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). Rather, the court must bear in mind that "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id.* The court must ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation and, if so, how strong the evidence is. *Id.* The Sixth Circuit in *Chen* explained,

> At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, her prima facie case is sufficient to support an inference of discrimination at trial. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993). But summary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation. *See Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 148 (2000). ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

*Id.*

A plaintiff must allege more than a dispute over the facts upon which her discharge was based in order to establish pretext. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-494 (6th Cir. 2001). She must put forth evidence that demonstrates the employer did not "honestly believe" in the proffered nondiscriminatory reason for its adverse employment action. *Id.* (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998)). An employer has an honest belief in its nondiscriminatory reason for discharging the employee "where the employer reasonably relied 'on the particularized facts that were before it at the time the decision was made.'" *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (quoting *Chrysler Corp.*,

12

155 F.3d at 807). In determining whether an employer "reasonably relied on the particularized facts then before it," it is not necessary that "the decisional process used by the employer be optimal or that it left no stone unturned." *Braithwaite*, 258 F.3d at 494 (quoting *Chrysler Corp.*, 155 F.3d at 807). "Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* As long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect. *Majewski*, 274 F.3d at 1117 (citing *Chrysler Corp.*, 155 F.3d at 806).

Summary judgment in favor of a defendant is appropriate where the plaintiff fails to establish a *prima facie* case or is unable to demonstrate pretext sufficient to rebut the defendant's legitimate, non-discriminatory reasons. *Barnhart v. Peckrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1395 (6th Cir. 1993). "The ultimate burden of persuasion remains with the plaintiff to prove that the employer's reasons were a pretext for discrimination *and* that the employer intended to discriminate on the basis of race." *Thurman*, 90 F.3d at 1166 (emphasis in the original) (citing *Hicks*, 509 U.S. at 502). The finder of fact may infer discrimination from the elements of a *prima facie* case, coupled with its disbelief of the rationale articulated by the employer. *See Hicks,* 509 U.S. at 511 ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will permit the trier of fact to infer the ultimate fact of intentional discrimination, and . . ., upon such rejection, 'no additional proof of discrimination is required.'"). *See also Barnett v. Department of Veterans Affairs*, 153 F.3d

338, 341 (6th Cir. 1998); *E.E.O.C. v. Yenkin-Majestic Paint Corp.,* 112 F.3d 831, 835 (6th Cir. 1997); *Thurman,* 90 F.3d at 1166-67.

   B. *Plaintiff has established a prima facie case of discrimination*

   Defendant alleges that plaintiff cannot establish a *prima facie* case of gender or race discrimination because she did not suffer an adverse action, was not qualified for the position, and cannot identify any similarly situated Caucasians males who were treated more favorably. Each assertion will be addressed in turn.

   To constitute an adverse employment action, the employment action must amount to "a materially adverse change" in the terms or conditions of employment and be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885, 886 (6th Cir. 1996). The particular employment action must be "objectively intolerable to a reasonable person." *Policastro* v. *Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002). An employee's "subjective impression concerning the desirability of one position over another generally does not control with respect to the existence of an adverse employment action." *Mitchell v. Vanderbilt University*, 389 F.3d 177, 183 (6th Cir. 2004) (citing *Policastro,* 297 F.3d at 539; *Henry v. Ohio Dept. of Mental Retardation & Dev. Disabilities,* 162 F. Supp.2d 794, 801 (S.D. Ohio 2000) (in turn citing *Kocsis,* 97 F.3d at 886). In determining whether an employee's change is material, the Court must consider the context of the action *Randolph v. Ohio Dept. of Youth Services,* 453 F.3d 724, 736 (6th Cir. 2006) (citing *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

   Defendant argues that making an offer to settle a grievance is not an example of an adverse action. Notably, defendant maintains that it was under no obligation to rehire plaintiff after her employment was terminated for dishonesty. Defendant further asserts that it did not

14

have a duty to reach a settlement with the Union offering plaintiff any further employment and, as a result, its settlement offer to reinstate plaintiff to a different position cannot be an adverse action. (Doc. 17 at 7-8, citing *Graves v. Fleetguard, Inc.*, 198 F.3d 245, 1999 WL 993963, at *5 (6th Cir. Oct. 21, 1999) (employer's offer of a new position to plaintiff on the condition that he drop discrimination charges he filed was not an adverse action); *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 632 (6th Cir. 2009) (stating that employer's agreement to settle a grievance was not an adverse action)).

Defendant further asserts that any proposal or counterproposal made by plaintiff's Union or CBT and subsequent agreement between CBT and the Union to settle the grievance was a privilege rather than a right. As such, CBT's refusal to place plaintiff in the same position she held before her termination for dishonesty cannot be characterized as an adverse action. (Doc. 17 at 8-9, citing *Many v. Erieview Joint Venture*, Case No. 78281, 2001 WL 664124 (Ohio App. 8 Dist. June 7, 2001) (employer's decision to refuse to settle plaintiff's age discrimination claims for an amount equal to the severance package presented to her at her termination did not constitute and adverse employment action)).

Plaintiff, however, asserts that both Title VII and Chapter 4112 of the Ohio Revised Code prohibit discriminatory treatment "with respect to compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1) and Ohio Rev. Code § 4112.02(A). Thus, although an employer is under no obligation hire employees, if an employer treats applicants differently based upon illegal discrimination such conduct is actionable under Title VII and/or Chapter 4112 of the Ohio Revised Code. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 259 (1981)("[E]mployer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria."). As noted by

15

the Sixth Circuit when addressing a claim involving a transfer of an employee during a

reduction in force:

> Although an employer is under no obligation to transfer to another position in the
> company whose position has been eliminated, the employer violates the ADEA
> when it transfers other displaced employees but does not place the plaintiff in a
> new position because of age discrimination.[4]

*Ercegovich*, 154 F.3d at 351. *See also Hawley v. Dresser Industries, Inc.*, 958 F.2d 720, 723

(6th Cir. 1992) (failure to transfer plaintiff when younger employees were given the opportunity

is evidence of discrimination).

The undersigned agrees that CBT had no obligation to reinstate plaintiff. However, once

it chose to offer plaintiff reinstatement, the terms and conditions of the offer could not have

been based on illegal discrimination. *Burdine*, 450 U.S. at 259. As stated above, in determining

whether the challenged action is materially adverse, the Court must consider the context of the

action. *Randolph,* 453 F.3d at 736. Viewing CBT's offer to plaintiff in context, reinstatement to

a lower-rated position with a lower salary while other non-protected employees were reinstated

to their previous positions without a loss in salary would be "objectively intolerable to a

reasonable person." *Policastro*, 297 F.3d at 539. Notably, from an objective standpoint, the

terms and conditions of plaintiff's reinstatement were significantly different than those afforded

to Caucasian male employees who were also offered reinstatement after being terminated for

dishonestly. Accordingly, the undersigned finds that CBT's offer of reinstatement to plaintiff

constitutes an adverse employment action and satisfies the second prong of the *McDonnell*

*Douglas* test.

---

[4] The same evidentiary framework applies to discrimination claims brought under Title VII, the ADEA and
Ohio law. *Mitchell,* 964 F.2d at 582.

At the next step, plaintiff must establish that she was qualified for the position. A court should focus on a plaintiff's objective qualifications to determine whether he or she is qualified for the relevant job. *Wexler*, 317 F.3d at 575. The *prima facie* burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field. *Id.* at 575-76.

Defendant maintains that plaintiff was not qualified for the Splicer position because she was not meeting CBT's expectations for the Splicer position at the time of her termination. (Doc. 17 at 9, citing *Harris v. J.M. Smucker's Co.*, 215 F.3d 1326, 2000 WL 658040, at * 2 (6th Cir. May 8, 2000) (to be qualified for the position the plaintiff "must prove that she was performing her job at a level which met her employer's legitimate expectations")). Defendant also asserts that plaintiff admitted that she had not yet mastered the Splicing position. (Doc. 19, pp. 28, 29, 30, 36). As noted above, plaintiff received a notice from CBT that she failed to pass the basic splicing class in December 2007 and was required to undergo additional training and retake the next available basic splicing class. (Doc. 19, Ex. 8). Plaintiff was also put on notice that her failure to pass the basic splicing class a second time could lead to a demotion up to and including dismissal. *Id.*

However, it is undisputed that to become fully proficient in the Splicer position, an employee typically requires forty-two months of experience in that position. (Doc. 17, Simpson Aff. ¶11). At the time of plaintiff's termination, she had been a Splicer from May 2007 through February 2008, or for approximately nine months. She was nearly finished with the additional training and had no indication that her training to that point was unsuccessful and/or that she was in danger of failing the basic splicing class for a second time. (Doc. 25, Tribble Aff. ¶ 3).

17

Thus, the fact that plaintiff had not yet mastered the position after nine months fails to establish that she was not meeting CBT's legitimate expectations for the position at that time.

Furthermore, "Sixth Circuit case law warns against conflating the first (*prima facie* case) and second (articulation of a legitimate non-discriminatory reason) steps in the *McDonnell-Douglas* analysis." *White v. Columbus Metropolitan Housing Authority,* 429 F.3d 232, 242 (6th Cir. 2005) (citing *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 584-85 (6th Cir. 2002); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000)). Thus, in considering whether a plaintiff is qualified in order to establish a *prima facie* case of discrimination, a court must evaluate whether a plaintiff established his qualifications independent of the employer's proffered nondiscriminatory reasons for discharge. *Id.*

The fact that plaintiff had not yet "mastered" the splicer position and/or that other employees were performing at a higher level than plaintiff should not be considered in determining whether plaintiff was qualified for the position for purposes of establishing a *prima facie* case of discrimination. Based on the foregoing, the undersigned finds that a reasonable jury could conclude that plaintiff was qualified for the Splicer position for purposes of establishing a *prima facie* case of discrimination.

The last element in the *prima facie* analysis requires the plaintiff to show that she was treated less favorably than similarly-situated individuals outside the protected class. To be treated as similarly-situated, an employee must "have dealt with the same supervisor [as the plaintiff], have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell,* 964 F.2d at 583. Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees

18

are similarly situated. *Pierce v. Commonwealth Life Ins.*, 40 F.3d 796, 801, 802 (6th Cir. 1994). However, the plaintiff need not demonstrate similarity in all respects, and the Court should evaluate the factors discussed in *Mitchell*, *supra* at p. 10, to the extent they are relevant to the particular circumstances of the case. *See Jackson v. FedEx Corp. Servs., Inc.*, 518 F.3d 388, 394 (6th Cir. 2008) (citing *Ercegovich*, 154 F.3d at 352). Thus, a court "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Id.* (quoting *Pierce*, 40 F.3d at 802).

Plaintiff identifies Mike Garibay and Clarence Miracle, both Caucasian males, as similarly-situated employees who received more favorable treatment. Plaintiff asserts that Garibay and Miracle were similar in all relevant aspects because like plaintiff they were also Splicers, members of the Union, and subject to the same rules and policies; they failed to answer the same question properly on the medical questionnaire; they were disciplined for falsifying a document in violation of Company Rule 2.9; and the final decision-maker in each situation was Michelle Simpson. (Doc. 33, Exs. 12, 23, 25). However, unlike plaintiff, Garibay was suspended, and not terminated, when he failed to list a current injury on the medical questionnaire. Garibay was ultimately reinstated. Miracle was terminated for the same offense, but then reinstated to his Splicer position pursuant to an agreement between CBT and the Union.

Defendant asserts that plaintiff has not provided any information about Mr. Garibay and Mr. Miracle relating to their years of experiences as Splicers, years of service at CBT, or level of performance. Mr. Garibay and Mr. Miracle had significantly more experience in the Splicer position at the time the Union negotiated the terms of their reinstatements. Mr. Garibay had been in the position for eight years, Mr. Miracle had ten years of experience as a Splicer, and

19

both had mastered the position. Because plaintiff had been in the position for only nine months, defendant argues that Messrs. Garibay and Miracle were not similarly situated in all relevant aspects. (Doc. 17 at 11, citing *Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 147 (6th Cir. 2007); *Leadbetter v. Gilley*, 385 F.3d 683, 691-92 (6th Cir. 2004)).

Plaintiff counters that defendant did not consider length of service and time as a Splicer as relevant factors when defendant disciplined Garibay and Miracle, and defendant should not be permitted to give those factors undue priority now. Plaintiff also asserts that in response to discovery requesting all files relating to, *inter alia*, the termination and reinstatement of Garibay and Miracle, defendant limited its response and did not include records relating to their prior disciplinary, performance, or employment histories, signaling the lack of importance of such factors.

While admittedly a close question, the Court determines that Messrs. Garibay and Miracle are similarly situated employees in all relevant respects for purposes of plaintiff's *prima facie* case. Defendant's comparison focuses on the amount of experience both Garibay and Miracle held on the Splicer job at the time the Union negotiated the terms of their reinstatements. In contrast, plaintiff's comparison focuses on the aspects of the job at the time it was actually performed by the three employees and at the time the three were disciplined for falsifying the medical form.

In the context of this case, the Court determines that the following factors are relevant to the Court's finding that Garibay and Miracle are similarly situated to plaintiff: plaintiff, Garibay and Miracle held the exact same position as a Splicer; they all performed the same job duties and reported to the same supervisor; they were all subject to the same rules; and they were disciplined for engaging in identical misconduct. There is no evidence that "experience" was a

20

relevant factor to being hired as a Splicer or at the time any of these employees were disciplined for falsifying their medical forms.[5]  As noted above, the ultimate question is whether employees involved in acts of "comparable seriousness" were nonetheless retained.  *Clayton*, 281 F.3d at 611 (citing *McDonald*, 427 U.S. at 283 n.11).  Here, plaintiff has identified two non-protected employees who held the same Splicer job as plaintiff and who were involved in acts of comparable seriousness (*i.e.*, provided inaccurate information on their medical questionnaires).  Unlike plaintiff, however, both were reinstated to their previous positions.  Based on the foregoing and in light of the facts surrounding this matter, the undersigned finds plaintiff, Mr. Garibay, and Mr. Miracle to be similarity-situated employees.  *See Mitchell*, 964 F.2d at 583; *see also McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005) ("The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated.'") (quoting *Ercegovich*, 154 F.3d at 352).

On the facts presented, the undersigned finds that plaintiff has established the minimal requirements of a *prima facie* case of gender and race discrimination.

   *C.  CBT's legitimate non-discriminatory reason for the terms of plaintiff's reinstatement and plaintiff's arguments regarding pretext*

The defendant has satisfied its burden of production by articulating a legitimate, nondiscriminatory reason for the terms of plaintiff's reinstatement.  Defendant claims that plaintiff was not reinstated to her former position as a Splicer because at the time of her

---

[5]The cases cited by defendant are distinguishable from the instant action.  In *Frazier*, the court determined the plaintiff was not similarly situated to non-minority employees for training purposes because he failed to present evidence that such employees held the same position or had the same extensive work experience as the plaintiff, both of which were directly related to the amount of training an employee was to receive.  *Frazier*, 250 F. App'x at 144-147.  Likewise, the court in *Leadbetter* determined that the plaintiff was not similarly situated to the candidate selected for promotion because he did not have similar academic achievements, experience, recommendations, and work record.  *Leadbetter*, 385 F.3d at 692.  In these cases, the plaintiff's experience was just one aspect of the courts' analysis on the "similarly situated" factor.

21

termination she was having difficulty in satisfactorily performing the duties of a Splicer and had not yet mastered the position. (Doc. 17, Simpson Aff. 8). Consequently, Ms. Simpson informed the Union that CBT could reinstate plaintiff as a Technical Clerk. The Union accepted the offer.

At the next step of the analysis, plaintiff must show by a preponderance of the evidence that defendant's articulated reason is false and was a pretext for discrimination based on plaintiff's gender and/or race. *Hicks*, 509 U.S. at 506-507. As noted above, a plaintiff can show pretext in three ways: (1) that the reason had no basis in fact, (2) that the reason did not actually motivate the termination, or (3) that the reason was insufficient to motivate the employer's action. *Chen*, 580 F.3d at 400. If plaintiff fails to carry this burden, summary judgment for defendant is appropriate. The ultimate question in every employment discrimination case is whether the plaintiff was the victim of intentional discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000).

Upon careful review, the undersigned finds that plaintiff has failed to present evidence creating a genuine issue of fact showing that defendant's stated reasons for the terms of her reinstatement, *i.e.*, her unsatisfactory performance as a Splicer, lacked a basis in fact or was insufficient to motivate CBT's decision not to offer her reinstatement to her former position as a Splicer. The evidence of record indicates that defendant's decision not to reinstate plaintiff to her former position was a legitimate business decision based on her struggling performance as a Splicer at the time of her termination.

In an effort to rebut defendant's stated reasons for the terms of plaintiff's reinstatement, plaintiff points to alleged inconsistent statements made by Ms. Simpson, CBT's HR Director of Employee Relations. Notably, Ms. Simpson's affidavit states that she asked Brian Thomas,

CBT's Director of Repair in the Field Operations department, about the possibility of reinstating plaintiff to a Splicer position. (Doc. 17, Simpson Aff. ¶ 8). According to Ms. Simpson, Mr. Thomas indicated that he would not like to see plaintiff return as a Splicer because of her poor performance history in that position. Ms. Simpson subsequently asked Jim Smith, Director of Call Center Operations, regarding the possibility of reinstating plaintiff to the position she held before she became a Splicer. *Id.* Mr. Smith indicated that he would welcome plaintiff in that position.

At her deposition, however, Ms. Simpson did not mention any conversations with Mr. Thomas or Mr. Smith.[6] Because Ms. Simpson's affidavit states that she spoke with Mr. Thomas and Mr. Smith regarding plaintiff's reinstatement, plaintiff claims a jury could infer pretext from Ms. Simpson's inconsistent statements. *See Tinker v. Sears Roebuck & Co.*, 127 F.3d 519, 523 (6th Cir. 1997) (conflicting testimony regarding reasons for plaintiff's dismissal creates jury issue regarding pretext); *Thurman* 90 F.3d at 1167 ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext."). Plaintiff further asserts that Ms. Simpson's testimony that she wanted plaintiff to return to a position where she had been previously successful has no basis in fact because she had never worked as a Technical Clerk, the position proposed in the Settlement Agreement. (Doc. 25, Tribble Decl. ¶ 2). Plaintiff's assertions are unavailing.

Notably, in both *Tinker* and *Thurman*, the court found evidence of pretext based upon the employer's proffer of inconsistent reasons for the plaintiff's termination. *Tinker*, 127 F.3d at

---

[6] Plaintiff also notes that neither Mr. Smith nor Mr. Thomas were identified in defendant's answer to plaintiffs interrogatory No. 2 which asks for the names of "every person known to Defendant to have knowledge of the facts, claims or defenses in this action. . . . " (Doc. 25, Ex. C).

523; *Thurman*, 90 F.3d at 1167. Here, in contrast, plaintiff has pointed to no evidence in the record showing that defendant offered a different or changing rationale for its decision in this litigation. When asked about the decision to reinstate plaintiff, Ms. Simpson testified as follows:

Q. Do you know why Miss Tribble wasn't at least in this document[7], why the proposal wasn't for her to return to the same job that she had been fired from?

A. I can't recall specifically, but my recollection is that she was not performing well as splicer and I wanted her to be successful in the position and she had demonstrated success in her previously-held position.

Q. Was technical clerk repair her previously-held position?

A. I can't recall without looking at her file, but with this paragraph in this draft, I would be comfortable saying yes.

(Doc. 33, Simpson Dep. at p. 68-69).

Additionally, during a line of questioning about plaintiff's rehire date being after February 1, 2008, Ms. Simpson stated:

A.     I don't know. I can't tell you what Monica's [the Union representative] intentions were on negotiating on behalf for Miss Tribble.

Q.     Okay.

A.     My intentions were she was not performing well as a splicer and I wanted her to be successful if we were going to bring her back.

---

[7] The referenced document is plaintiff's exhibit 17, a copy of a letter from Ms. Simpson to Monica Hogan dated August 15, 2008, detailing the terms of the agreement between CBT and the Union to reinstate plaintiff to the Technical Clerk position. (Doc. 33, p. 30).

24

*Id.* at p. 70.

Although Ms. Simpson's deposition testimony does not identify any conversations with Mr. Smith and/or Mr. Thomas as does her affidavit, the reason given for the terms of plaintiff's reinstatement remained unchanged, *i.e.*, plaintiff's struggling performance as a Splicer.

Moreover, and contrary to plaintiff's assertion, the fact that she had not worked as a Technical Clerk does not establish that Ms. Simpson's statements that she wanted to place plaintiff in a position where she would be successful lacks any factual basis. In her supplemental affidavit, Ms. Simpson noted the following:

> The technical clerk position is in the Repair Call Center of CBT's Call Center Operations Dept. Prior to being promoted to the splicer position she held at the time of her dismissal, Plaintiff held two Call Center positions in CBT's Call Center Operations Dept. Specifically she was hired as an information associate in the Directory Assistance Call Center and was subsequently promoted to sales consultant in the Residence Services Call Center. The technical clerk position offered to Plaintiff is a higher level, higher paying Call Center position than the sales consultant position she held immediately prior to being promoted to splicer.

(Doc. 31, Supplemental Simpson Aff. )

Offering plaintiff a higher level position in the Call Center than she previously held does not establish that Ms. Simpson's statement that she wanted to place plaintiff in a position where she could be successful lacks a factual basis. To the contrary, the evidence of record establishes that plaintiff worked in CBT's Call Center the majority of her twelve-year tenure with the CBT and "held positions with increasing responsibility." (Doc. 19, pp. 20-21; Doc. 27, p. 1). Such evidence indicates a reasonable basis in fact for CBT's belief that plaintiff would be successful in a higher level Call Center position. Accordingly, plaintiff has failed to show that defendant's articulated reasons for its decision were factually false. *Manzer*, 29 F.3d at 1084.

Lastly, plaintiff asserts that pretext may be inferred from other discriminatory terms

25

surrounding the offer of reinstatement to plaintiff, specifically the terms that plaintiff be considered a "new hire" for wage purposes and be subject to termination upon her next offense. (Doc. 25 at 17). Plaintiff contends that *defendant* has failed to offer any explanation as to why these terms of plaintiff's reinstatement differed from those of Garibay and Miracle. *Id.* Given the difference in these terms, plaintiff asserts that a jury could find that defendant's stated reason for not offering plaintiff reinstatement to a Splicer position, *i.e.,* lack of experience and proficiency as a Slicer, was insufficient to motivate the decision. *See Manzer,* 29 F.3d at 1084.

Plaintiff's assertion concerning defendant's failure to explain the differences in the terms of plaintiff's reinstatement vis-a-vis those of Messrs. Garibay and Miracle impermissibly shifts the burden to defendant to disprove pretext. *See Burdine*, 450 U.S. at 252-53. The burden of proof rests with plaintiff to establish that the difference in treatment was in fact a pretext for discrimination. Plaintiff, however, has failed to introduce any evidence or testimony from Union representatives regarding the negotiations surrounding plaintiff's grievance and the terms of her reinstatement, or those of her fellow union members, Mr. Garibay and Mr. Miracle. Plaintiff, Mr. Garibay, and Mr. Miracle were all represented by the Union after their termination/suspension(s) for dishonesty. The terms of their reinstatement were each negotiated and bargained for on their behalf by the Union.[8] The dynamic and speed of union negotiations depends upon the relative bargaining positions and priorities of the bargaining parties. (Doc. 31, Supplemental Simpson Aff. ¶ 6). Plaintiff's assumption that CBT was alone responsible for the terms of the outcome of the negotiations between the Union and CBT is unsupported by any

---

[8]Ms. Simpson testified that she could not recall why Garibay was suspended and not terminated, "other than the agreement" [with the Union]. (Doc. 33, Simpson Dep. 58). When asked why plaintiff's reinstatement offer included a new-hire date after February 1, 2008, Ms. Simpson stated: "It is not my job to negotiate for her. That would have been Monica's responsibility." (Doc. 33, Simpson Dep., 69-70).

evidence. The Court may not speculate as to why CBT and the Union came to the different reinstatement terms with Mr. Garibay and Mr. Miracle. Plaintiff has not offered any evidence from which a jury could reasonably infer that the difference in terms was based on plaintiff's race or sex. *See Thurman*, 90 F.3d at 1166 (citing *Hicks*, 509 U.S. at 502) ("The ultimate burden of persuasion remains with the plaintiff to prove that the employer's reasons were a pretext for discrimination and that the employer intended to discriminate on the basis of race.").

CBT has demonstrated legitimate, non-discriminatory reasons for the terms of plaintiff's proposed reinstatement, and plaintiff has failed to rebut these reasons by presenting evidence of a discriminatory purpose from which a reasonable jury could infer that plaintiff's race or sex was more likely the reason for terms of her reinstatement. It is undisputed that plaintiff was struggling with her duties as a Splicer at the time of her termination. Whether plaintiff might have ultimately been successful if reinstated to a Splicer job is not a decision for this Court. *See Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996) ("The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with."); *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 545 (6th Cir. 1991) (The aim of a court in assessing an alleged Title VII violation "is not to review bad business decisions, or question the soundness of an employer's judgment."). Rather, this Court's duty is to distinguish "between a poor business decision and a reason manufactured to avoid liability." *Hartsel,* 87 F.3d at 800. Plaintiff has failed to present sufficient evidence creating a genuine issue of fact showing she was treated differently because of her race or sex. Accordingly, defendant's motion for summary judgment on plaintiff's race and sex discrimination claims should be granted.

### D. Claims related to plaintiff's termination

Plaintiff's complaint seeks redress for alleged gender and racial discrimination relating

27

to the terms of CBT's reinstatement offer and does not challenge her termination.  However, in her memorandum in opposition to defendant's motion for summary judgment, plaintiff argues that she is asserting an additional claim that her termination resulted from race and gender discrimination.  Plaintiff concedes that her complaint does not include a claim challenging her termination.  Nonetheless, she appears to assert that claims relating to her termination are properly before the Court because she first learned that Mr. Garibay had only been suspended, and not terminated, at Ms. Simpson's deposition.  (Doc. 25, p. 19).

Notwithstanding plaintiff's assertion, she has not moved to amend her complaint to include a claim of discrimination relating to her termination.  Although leave to amend a complaint shall be "freely given when justice so requires," a party must act with due diligence in seeking a amendment under Rule 15(a), Fed. R. Civ. P.  *See Spadafore v. Gardner*, 330 F.3d 849, 852-53 (6th Cir. 2003) (citing *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995)).  In addition, Rule 15(a) must be read in conjunction with Federal Rule 16(b), which requires a district court to enter a scheduling order limiting the time to amend pleadings and provides that such order shall not be modified "except upon a showing of good cause."  Fed. R. Civ. P. 16(b).  "Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)."  *Leary v. Daeschner,* 349 F.3d 888, 909 (6th Cir. 2003).

Moreover, a non-moving party plaintiff may not raise a new claim for the first time in response to the opposing party's motion for summary judgement.  *Tucker v. Union of Needle Traders Industrial and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2009).  The Sixth Circuit has held that where a plaintiff did not include a claim in her complaint and did not move to

28

amend her complaint, it would be "unfair surprise" to permit her to raise the claim at the summary judgment stage. *Id.* A plaintiff may not amend her complaint through argument in a brief opposing summary judgment. *Gilmore v. Gates McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

Ms. Simpson's deposition was conducted on January 11, 2011. (Doc. 33). The dispositive motion deadline in this matter was February 28, 2011. (Doc. 15). Thus, plaintiff had more than a month in which to move to amend her complaint to include claims relating to her termination prior to the filing of dispositive motions. Plaintiff does not address her failure to do so. Accordingly, the undersigned finds that any claims of discrimination relating to plaintiff's termination are not properly before the Court.

### III. Conclusion

For these reasons, the court hereby RECOMMENDS that defendant's motion for summary judgment be GRANTED.

Date: 5/3/2011

Karen L. Litkovitz
United States Magistrate Judge

29

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TIFFANY TRIBBLE,                                Case No. 1:09-cv-568
    Plaintiff,                              Weber, J.
                                                Litkovitz, M.J.

    v.

CINCINNATI BELL TELEPHONE,
    Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the

filing date of this R&R. That period may be extended further by the Court on timely motion by

either side for an extension of time. All objections shall specify the portion(s) of the R&R

objected to, and shall be accompanied by a memorandum of law in support of the objections. A

party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being

served with a copy of those objections. Failure to make objections in accordance with this

procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States

v. Walters,* 638 F.2d 947 (6th Cir. 1981).

30